**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

CALVIN LEE MARSHALL,
ADC #90207                                                                                                PLAINTIFF

V.                                      5:11-cv-00239-BSM-JTK

REVONNA WALKER, et al.                                                                      DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

1

2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

### I.   Introduction

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 88), to which Plaintiff filed a Response (Doc. No. 94).

Plaintiff is a state inmate incarcerated at the East Arkansas Regional Unit (EARU) of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging constitutional violations associated with his placement in a behavioral modification program (BMP) at the Varner Super Max (VSM) Unit, and his incarceration thereafter in administrative segregation (ad seg) at EARU. Plaintiff asks for

monetary and injunctive relief from the Defendants.

Following a hearing on February 9, 2012, the Court clarified Plaintiff's claims as follows: 1) the VSM behavioral modification program is unconstitutional, as it punishes an inmate twice for the same negative behavior; 2) Plaintiff's placement in ad seg for nine years without meaningful reviews violated his due process and Eighth Amendment rights; 3) Defendants retaliated against Plaintiff by continuing him in the behavioral modification program because of the grievances and lawsuits Plaintiff filed against them; 4) Defendants violated Plaintiff's equal protection rights by treating him different from other inmates similarly-situated to him (Doc. No. 45, p. 3).

## II.   Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable

to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

    **A.**    **VSM Behavior Modification Program (BMP)**

          **1)**    **Defendants' Motion**

The BMP "is a program designed to assist inmates in learning to modify their behavior....by learning to live within the rules and expectations of the correctional setting." (Inmate Handbook, Doc. No. 89-1, p. 4.) The eighteen-month Program consists of five levels, each with rules, procedures, and privileges. (Id., p. 5.) Every thirty days, an inmate is assessed by the Classification Review Committee, which considers the inmate's performance and his compliance with VSM responsibilities and guidelines, in determining if the inmate should be promoted, maintained, or demoted from his current level. (Id.) As a former VSM Warden, Grant Harris states in an affidavit that when regarding an inmate's progression in the BMP, he considered the inmate's program participation, including completion of program assignments; the inmate's behavior, within the parameter of the VSM rules and procedures; and proper interaction with the VSM staff. (Doc. No. 89-3, pp. 1-2.) Inmates who continue to receive disciplinary violations and be found guilty of them, and who choose not to participate in the classification committee rules, are considered disinterested program participants. (Id., p. 2.) As inmates progress through the levels, from I to V, certain privileges are increased, such as television, commissary, telephone calls, possession of newspapers and library books, and visitation. (Doc. No. 89-1, pp 1-11.)

Harmon states that the BMP, which operates only at the VSM, is not the same as administrative segregation (AS), which is a classification available at any of the Units for inmates whose "continued presence in the general population poses a serious threat to life, property, self, staff or other inmates. Also inmates who threaten the security or orderly running of the institution may be segregated." (Doc. No. 89-3, p. 2, 89-4:Administrative Directive 11-42.) While the BMP classification committee can increase or decrease a participant's program level, they cannot reduce an inmate's classification level. (Doc. No. 89-3, p. 3.) However, a disciplinary hearing officer can reduce an inmate's class level after finding an inmate guilty of a disciplinary charge. (Id.)

Plaintiff was recommended for placement in the BMP at a hearing on July 18, 2005, based on his "disciplinary history - assaultive, disruptive behavior." (Doc. No. 89-8, p. 1.) This recommendation was affirmed by the Chief Deputy Director on July 21, 2005. (Id., p. 2.) During his confinement in the program, Plaintiff's placement consistently was reviewed by the classification committee every thirty days, at which time he could appear before the committee and hear the reasons for their decisions. (Doc. No. 89-10.) Plaintiff admits that from 2005 until 2009, he was convicted of seventeen disciplinary violations , and refused to participate in numerous committee reviews. (Doc. No. 89-15, Doc. No. 89-11.) He was removed from the program on February 26, 2011, and transferred to the EARU where he was assigned to ad seg. (Doc. No. 89-10, 89-9, p. 1.)

Based on these undisputed facts, Defendants state that Plaintiff's confinement at the BMP for six years, and his subsequent confinement in ad seg for seven months (at the time

5

of the filing of the complaint on September 12, 2011), did not impose an "atypical and significant hardship compared to the ordinary incidents of prison life" so as to violate due process. Sandin v. Conner, 515 U.S. 472, 484-6 (1995). In Sandin, courts were instructed to consider three factors in determining whether confinement is atypical and significant: the effect of the restriction on the length of confinement; the extent to which the conditions of confinement differ from other routine prison conditions; and the duration of the confinement under special conditions. (Id. at 484.) Defendants note that Plaintiff was afforded procedural due process prior to his entrance in the program, and also during the program, in the form of hearings, an opportunity to be heard, and written reasons for the committee decisions. Plaintiff also does not allege that while in the BMP he was denied all privileges or how the program was atypical and significant from the ordinary incidents of prison life.

        **2)**      **Plaintiff's Response**

Plaintiff claims that the BMP and ad seg are the same, and as a result, he has been incarcerated continuously in ad seg since 2005 without any meaningful reviews, because Defendants consistently relied on an escape conviction from 1996 to justify their decisions. He also states that the BMP is unconstitutional, because inmates are punished twice for the same negative behavior, both in the disciplinary hearings and then in the classification hearings where a disciplinary violation is a factor in denying promotion in levels. "Every single time Plaintiff appeared before the classification committee following a disciplinary conviction, defendants sanctioned him with punitive restrictions by revoking his incentive level as a consequence of being found guilty." (Doc. No. 95, p. 18.) He claims this violates

due process, because unlike the disciplinary hearings, the classification committee hearings do not provide the same type of due process protections. He states he suffered physical and emotional pain while in the BMP and ad seg, thereby constituting an atypical and significant deprivation. He also claims he was not allowed to attend or receive vocational, educational, rehabilitation or religious programs equal to privileges accorded to inmates at other units, and that he was denied out-of-cell exercise and restricted to one-hour non-contact visitation sessions.

### 3) Analysis

Although the due process clause does not provide an inmate with a liberty interest in remaining in the general prison population, a state may create liberty interests under certain circumstances which are protected by the due process clause. Sandin v. Conner, 515 U.S. 472 (1995). In Sandin, the Court held that such interests are limited to freedom from restraint which imposes an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. Id. at 483-4. In Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003), the Court held that a "demotion to segregation, even without cause, is not itself an atypical and significant hardship." In determining what is atypical and significant, the courts look to the conditions of confinement in segregation, the length of time spent in segregation, and the effect, if any, on the duration of the prisoner's incarceration. Sandin, 515 U.S. at 486-7. After it is determined that a liberty interest exists, the court must also determine whether the appropriate due process was provided. Williams v. Hobbs, 662 F.3d 994, 1000 (8th Cir. 2011). In Williams, the Court looked to whether the periodic reviews of

the inmate's long-term stay in administrative segregation were "meaningful." Id.

First, this Court must determine whether Plaintiff possessed a liberty interest in his participation/presence in the BMP program. In Kennedy v. Blankenship, the court held that a liberty interest "is an interest in the nature of [the inmate's] confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined." 100 F.3d 640, 643 (8th Cir. 1996.) Courts have held, however, that certain prison "programs" do not implicate a liberty interest. In Persechini v. Callaway, 651 F.3d 802, 807 (8th Cir. 2011), the court held that an inmate who was removed from a prison drug treatment program did not have a liberty interest in the program. "[D]enying or terminating drug abuse treatment, like denial or termination of other discretionary prison programs, does not result in either an atypical or a significant hardship in relation to the remainder of the prison population." Id. In addition, courts found no liberty interest in a work release program in Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 668 (8th Cir. 1996), in participation in a sex offender treatment program in Jones v. Moore, 996 F.2d 943, 945 (8th Cir. 1993), or in a behavior control confinement program, similar to the BMP, in Byrd v. Arias, No. 09-55522, 2011 WL 196174 (9th Cir. 2011).

Based on such, this Court finds Plaintiff had no liberty interest in the BMP, and therefore, his assignment did not implicate the due process clause. The Court also disagrees with Plaintiff's characterization of the program as punitive in nature, and his claim that he was punished twice for disciplinary violations, both in disciplinary hearings and the classification hearings. Plaintiff does not allege that he was convicted of the disciplinary

charges without a hearing, a right to be present and offer statements and/or witnesses, and a right to review on appeal. Although certain restrictions of the BMP may appear similar to restrictions set forth in punitive confinement, the Court finds adequate evidence of the uniqueness of the program based on its aim to modify or improve inmate behavior in order to foster reintegration to less secure facilities. (Doc. No. 89-1.) In addition, the Court notes that "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.....The courts should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982).

Therefore, the Court finds that Plaintiff has not set forth facts to support a finding that his conditions of confinement during the program were an atypical or significant departure from that of ordinary prison life, even at the lowest level of the program. Plaintiff was provided numerous privileges and the opportunity in which to increase his privileges by moving through the incentive levels. According to the VSM BMP Handbook (Doc. No. 89-1), the program consists of five levels, ranging from level I to V. Inmates on level I are permitted the following: daily general correspondence, access to legal materials related to active litigation, two personal books and one newspaper subscription, religious services and material as requested, five shower times per week; weekday television for approved programming, $12 per month of restricted items through commissary, one collect telephone call per month, educational materials or programs as requested, personal property to fit in one storage container, access to law library materials, and one non-contact visitation after sixty

days of satisfactory behavior. (Id., p. 11.) In addition, inmates are permitted access to health services staff through daily rounds, access to chaplain rounds on a weekly basis, and access to mental health staff through weekly rounds. (Id., pp. 7-10.) "Progression through the level system is based upon Inmate behavior. To move from one program level to another, Inmates must comply with the rules and procedures of the Arkansas Department of Correction and adhere to the responsibilities/expectations for the VSM, to include meeting the requirements of each level." (Id., p. 5.) Once an inmate meets the requirements of his level, the Classification Committee will assess him and make recommendations concerning promotion to a higher level. (Id.) Each new level includes more and expanded privileges. (Id.) Plaintiff's failure to progress in the program was due solely to his own inability to behave in accordance with prison rules, as his consistent disciplinary convictions rendered progression to level V nearly impossible.

However, even if this Court were to find a liberty interest in Plaintiff's BMP confinement, the Court finds that Defendants afforded him adequate due process. In Wilkinson v. Austin, the Court found that Ohio inmates had a liberty interest in avoiding placement in a supermax facility. 545 U.S. 209, 223-4 (2005). However, the Court found that they were provided sufficient due process because they were provided notice for their transfer to the Unit, were permitted to attend and participate in a transfer hearing, were provided reasons for the transfer, were permitted to appeal the decision, and were provided a placement review within thirty days of the transfer. Id. at 225-227. In this case, Plaintiff was provided a due process hearing prior to his entry into the BMP in 2005, and an

opportunity to participate in the hearing and to appeal the decision to transfer him to the program. (Doc. No. 89-8, pp. 1-2.) He also could attend classification hearings every thirty days in which his progress in the program was evaluated, and the committee was required to provide him notice for the reasons for their decisions at these hearings. (Doc. Nos. 89-10, pp. 1-20; 89-11, pp. 1-28; 89-14.) Plaintiff does not deny that he waived his presence at numerous hearings, or that during his time during the program he was convicted of numerous disciplinary violations which hindered his progression through the levels. (Doc. Nos. 89-10; 89-11, 89-15.) See also transcript of February 9, 2012 Hearing, Doc. No. 49, p. 45. Therefore, the Court finds as a matter of law that Plaintiff's placement in the BMP from 2005 until 2011 did not violate due process.

Next, the Court must determine whether Plaintiff's later confinement in ad seg at EARU implicated a liberty interest. In Kennedy v. Blankenship, the court held that the plaintiff's demotion from administrative segregation to punitive isolation was "not the sort of deprivation that qualifies as 'atypical and significant.'" 100 F.3d at 642. Furthermore, in Phillips v. Norris, Court held that the absence of contact visitation, exercise privileges, and chapel rights for thirty-seven days did not constitute an atypical and significant hardship. "We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." 320 F.3d at 847. In addition, in Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997), the Court held that administrative confinement for fifteen months did not impose an atypical and significant hardship. Finally, in Jones v. Baker, 155 F.3d 810 (6th Cir. 1998), the Court held that administrative segregation confinement for two

and one-half years was not atypical and significant. See also Carrera v. Nebraska Department of Correctional Services, No. 4:04CV3062, 2005 WL 2042305 *6 (D.Neb.

In this case, at the time Plaintiff filed his Complaint on September 12, 2011, he had been incarcerated in ad seg at EARU for approximately seven months. (Doc. No. 2.) Plaintiff does not provide evidence of conditions of confinement in ad seg which would require this Court to find he suffers an atypical and significant hardship; therefore, the Court finds as a matter of law that Defendants did not violate due process.

### B.  Retaliation

Although Plaintiff clarified earlier in this litigation that he does not challenge his numerous disciplinary charges and convictions as retaliatory,[1] he claims that Defendants retaliated against him because of the lawsuits and grievances he filed during his tenure in the BMP, by consistently denying his progression through the incentive levels of the program.

#### 1)  Defendants' Motion

Defendants deny that Plaintiff's continued confinement in the BMP or ad seg was the result of retaliation by members of the classification committees. In order to state a claim for retaliation, one must allege that he engaged in constitutionally-protected activity and that defendants took adverse action against him in retaliation for that protected activity. Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007). Defendants state Plaintiff offers no facts in support of this general allegation, and note that many of the grievances to which Plaintiff

---

[1] See Doc. No. 45, p. 6.

refers occurred prior to his placement in the BMP. In addition, although Plaintiff alleges that the filing of grievances led to the committee's decisions to deny him progression through the incentive levels, he does not deny that he committed numerous disciplinary violations during that time period which could have supported the committee's decisions. Defendants state the responses to Plaintiff's grievances show that Plaintiff's assignment to the BMP was due to his disruptive behavior, and that good behavior would help him progress through the program. (Doc. No. 89-1.)

### 2) Plaintiff's Response

Plaintiff states Defendant Kelley denied his request to be released from BMP made in a letter to her on June 12, 2008, and also denied several of his grievance appeals. (Doc. No. 95-2, pp. 119-120). He states Defendants Jackson and Harmon created an unwritten policy of retaliation against him for the filing of grievances, and that the remaining Defendants condoned and implemented this policy by keeping Plaintiff incarcerated under ad seg conditions.

### 3) Analysis

In order to avoid summary judgment, Plaintiff must be able to submit affirmative evidence of the retaliatory motive of defendants. See Lewis v. Jacks, 486 F.3d at 1029. In addition, "broad allegations of retaliation are not sufficient to support a claim for violation of constitutional rights." Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987), citing Ervin v. Cicone, 557 F.2d 1260, 1262 (8th Cir. 1977) (per curiam). The only evidence Plaintiff provides in support of this claim are copies of some grievances he filed during the time

period in which he was enrolled in the BMP. (Doc. No. 2, pp. 29-121; Doc. No. 95, pp. 42-120.) Some of the Defendants are named in these grievances, and some of the grievances concern the allegations set forth in Plaintiff's Complaint.[2] However, Plaintiff offers no other evidence, in the form of statements or conduct by Defendants, to support his conclusory allegation that the classification committee decisions were made in retaliation for the filing of grievances. Absent such, the Court finds no dispute of material fact, and that Defendants are entitled to judgment as a matter of law on this claim.

### C. Equal Protection

Plaintiff alleges in his Complaint that he was discriminated against and denied equal protection rights by Defendants "due to differing or unfair treatment among inmate with different classifications, in different institutions, or in different types of confinement." (Doc. No. 2, p. 13). He refers to a grievance he filed about this, VSM 08-02125, and complains that his commissary, out-of-cell exercise, visitation, and vocational, educational rehabilitation or religious programs and privileges are not the same as "similarly situated different classes of inmates in the Varner Supermax Unit, Cummins Unit, East Arkansas Regional Unit, Tucker Max Unit, and the Women's Unit." (Id., p. 14.)

### 1) Defendants' Motion

---

[2]The Court also notes that many of the grievances concern incidents occurring prior to September 12, 2008, and therefore occurred outside the three-year statute of limitations. In Arkansas, § 1983 claims are subject to the three-year statute of limitations found in Ark. Code Ann. § 16-56-105. See Miller v. Norris, 247 F.3d 736, 739 (8th Cir. 2001), and Ketchum v. City of West Memphis, 974 F.2d 81 (8th Cir. 1992)

Defendants state these allegations should be dismissed as a matter of law, because in order to support an equal protection claim, Plaintiff must show that he was treated different from inmates who were similarly-situated to him, citing Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994). In this particular case, however, inmates housed at other Units were not similarly-situated because the BMP was unique to the VSM, and because inmates at other Units had different opportunities to participate in different programs, based on their respective classifications. Defendants state that all inmates in the BMP who were similarly-situated were treated the same and were afforded privileges based on their respective incentive levels. In support, they present the Affidavit of Todd Ball, the Deputy Warden for the EARU, who states that inmates housed in ad seg at the Unit are afforded the same rights and privileges as inmates housed in ad seg at other units, and that Plaintiff is provided the same privileges and opportunities as other inmates in ad seg. (Doc. No. 89-5, p. 1.) He also states that an inmate's class level determines to which privileges he is entitled, and refers to AD11-42, which sets forth privileges afforded inmates on ad seg. (Id., Doc. No. 89-4.). Finally, Defendants state Plaintiff has not provided any evidence of specific inmates who are similarly-situated to him, yet treated in a different manner.

**2)  Plaintiff's Response**

Plaintiff states that the BMP is the same as ad seg at other Units, and that inmates in ad seg at other Units are granted more privileges than those in BMP at VSM.

**3)  Analysis**

The Fourteenth Amendment equal protection clause requires the government "to treat

15

similarly situated people alike." City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). While this protection extends to inmates, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government....Where a state penal system is involved, federal courts have,...additional reason to accord deference to the appropriate prison authorities." Turner v. Safley, 482 U.S. 78, 84-85 (1987).

Plaintiff alleges that he is being treated differently from similarly-situated inmates at other Units. With respect to his time in the BMP, the Court finds that this allegation fails to support an equal protection claim, because there is no dispute of fact that the BMP is unique to the VSM Unit. Although Plaintiff alleges that the BMP is the same as ad seg, he provides no specific proof of such. To the contrary, Defendants provide proof of the various privileges afforded to inmates in the five incentive levels of the BMP, as opposed to ad seg privileges set forth in AD 11-42. While the ad seg privileges are similar to those offered in the BMP, the privileges differ depending on the particular incentive level of the inmate. Therefore, Plaintiff does not provide evidence that he was treated different from similarly-situated inmates while in the BMP.

Similarly, with respect to his subsequent incarceration in the ad seg Unit of the EARU, Plaintiff does not provide evidence to support his equal protection claim. He does not allege that any particular similarly-situated inmate received different opportunities or privileges than Plaintiff. He also does not counter the testimony of Deputy Warden Ball that

Plaintiff has not been treated in a different manner from any other similarly-situated inmates in ad seg. Therefore, the Court finds as a matter of law that this claim must fail.

### D.   Qualified Immunity

Defendants have also moved for summary judgment based on the doctrine of qualified immunity. Qualified immunity protects officials who acted in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194, 201 (2001).[3] Defendants are entitled to qualified

---

[3]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the

immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

Upon close review of the evidence in support of the Motion for Summary Judgment, the Court finds that Defendants acted reasonably under the circumstances. No reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

## III. Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 88) be GRANTED and Plaintiff's Complaint against Defendants be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 28th day of May, 2013.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

---

circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).